**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| BALTIMORE AIRCOIL COMPANY, INC.,   ) | |
| ) | |
| Plaintiff,   ) | Civil Action No. 1:14-cv-1525-CCB |
| ) | |
| v.   ) | |
| ) | |
| SANDERSON FARMS, INC., and   ) | |
| EAGLE MOUNTAIN INTERNATIONAL   ) | |
| CHURCH INC. d/b/a KENNETH   ) | |
| COPELAND MINISTRIES,   ) | |
| | |
| Defendants. | |


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO STAY PLAINTIFF'S SECONDARY CUSTOMER CASE PENDING
RESOLUTION OF ITS UNDERLYING CASE AGAINST MANUFACTURER**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND....................................................................................3

III.    ARGUMENT ...........................................................................................................4

        A.     Applicable Legal Standard on a Stay Motion .........................................4

        B.     The "Customer-Suit" Doctrine Favors a Stay of the Customer Case ......4

        C.     The Customer Case Is In Its Incipient Stages ........................................10

        D.     A Stay Would Not Unduly Prejudice BAC .............................................10

        E.     A Stay Will Simplify the Issues For Trial .............................................11

IV.    CONCLUSION......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. C. Aukerman Co. v. R. L. Chaides Const. Co.*,
960 F.2d 1020 (Fed. Cir. 1992) (*en banc*) .............................................................8

*Baltimore Air Co., Inc. v. Sanderson Farms, Inc. and Eagle Mountain
International Church, Inc. d/b/a Kenneth Copeland Ministries*,
Case No. 1:14-cv-1525 ....................................................... *passim*

*Baltimore Air Co., Inc. v. SPX Cooling Tech., Inc.*,
Case No. 1:13-cv-02053 ....................................................... *passim*

*Codex Corp. v. Milgo Elec. Corp.*,
553 F.2d 735 (1st Cir. 1977).........................................................2

*Corry v. CFM Majestic Inc.*,
16 F. Supp. 2d 660 (E.D. Va. 1998) ........................................5

*Glenayre Elecs, Inc. v. Jackson*,
443 F.3d 851 (Fed. Cir. 2006).....................................................7

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990)...............................................2, 5

*In re Nintendo*,
2014 WL 2889911 ....................................................... *passim*

*In re Papst Licensing GmbH & Co. KG Litig.*,
767 F. Supp. 2d 1 (D.D.C. 2011)...........................................5, 11

*Refac Int'l Ltd. v. IBM*,
798 F.2d 459 (Fed. Cir. 1986).................................................9, 10

*Shifferaw v. Emson USA*,
2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ....................6, 8

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1349 (Fed. Cir. 2011)...........................................1, 2, 5

*In re Webvention LLC '294 Patent Litig.*,
868 F. Supp. 2d 500 (D. Md. 2012)........................................4, 10

**Other Authorities**

U.S. Patent No. 7,107,782.........................................................3, 6

Defendants Sanderson Farms, Inc. ("Sanderson Farms") and Eagle Mountain International Church ("Eagle Mountain Church") (collectively "Customer Defendants"), by and through their undersigned counsel, offer the following in support of their concurrently filed Motion to Stay.

## I.      INTRODUCTION

SPX Cooling Technologies, Inc. ("SPX") and Plaintiff Baltimore Aircoil Company ("BAC") are both in the business of manufacturing air cooling towers and condensers.  BAC initially filed a single patent infringement suit against SPX in July 2013.  (*Baltimore Air Co., Inc. v. SPX Cooling Tech., Inc.*, Case No. 1:13-cv-02053 ("the SPX Case").)  Six months later, after SPX had filed for reexamination of the patent-in-suit and notified this Court of its intent to move to stay the case, BAC brought a duplicative suit in Texas against two of SPX's customers—a ministry and a poultry business.  (*Baltimore Air Co., Inc. v. Sanderson Farms, Inc. and Eagle Mountain International Church, Inc. d/b/a Kenneth Copeland Ministries*, Case No. 1:14-cv-1525 ("the Customer Case").)

To avoid prolonged motion practice in Texas, the parties previously agreed to transfer the Customer Case from Texas and to consolidate it with the SPX Case.  On June 25, 2014, however, subsequent to the parties' agreement to transfer and consolidate the cases, the Federal Circuit issued an opinion in  *In re Nintendo of Am.*, Inc., --- F.3d ---, 2014 WL 2889911, *2-3 (Fed. Cir. June 25, 2012) (copy attached as Exhibit A).  This decision expanded the application of the customer suit doctrine, which traditionally provided an exception to the first-to-file rule to "stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum."  *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).  The Federal Circuit issued a writ of mandamus

ordering the U.S. District Court for the Eastern District of Texas to sever, stay, and transfer to

the Western District of Washington a suit against Nintendo from a suit against retailers.

*Nintendo,* 2014 WL 2889911 at *2-3.  It stated that:

> When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence. *Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F.3d 1349, 1357 (Fed. Cir. 2011); *Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1464 (Fed. Cir. 1990).  This "customer-suit" exception to the "first-to-file" rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the "true defendant" in the dispute.  *Codex Corp. v. Milgo Elec. Corp*., 553 F.2d 735, 737-38 (1st Cir. 1977).
>
> While the circumstances of this case differ from those of the customer-suit exception, we agree with the district court that the same general principles govern in that Nintendo is the true defendant.

*Id*. at *2.  Accordingly, the Federal Circuit held that in situations where the "[manufacturer's]

liability is predicate to recovery from any of the [customer] defendants, the case against [the

manufacturer] **must** proceed first, in any forum."  *Id*., 2014 WL 2889911 at *3.  (emphasis

added).  The *Nintendo* decision thus extended the "customer suit" doctrine to cases such as this

one, *i.e*., where the action against customer and manufacturer are both pending in the same court.

 *Id*.

Upon review of the *Nintendo* decision, Defendants believe the most appropriate course is

for the Court to stay the Customer Case while the SPX Case is litigated, as was ordered in

*Nintendo*.  *See also* Defendant's Partial Opp. to Plaintiff's Mot. to Consolidate, Dkt. No. 37.

Because the disposition of the claims in the SPX Case will likely be dispositive of all or nearly

all those asserted with respect to SPX products in the Customer Case, the Court should leave the

Customer Case stayed until such time as the SPX Case is resolved.  This will further the interests

of judicial efficiency and save the Customer Defendants from the costs of litigation and trial

when they are only peripheral to the issues of this dispute.

## II.     FACTUAL BACKGROUND

On July 16, 2013, BAC filed suit against SPX alleging that SPX Marley MH Fluid

Cooler infringed at least claim 22 of the U.S. Patent No. 7,107,782, entitled "Evaporative Heat

Exchanges and Method" ("the '782 Patent"), which issued on September 19, 2006.  After SPX

moved to dismiss BAC's claim for willfulness and indirect infringement, BAC filed a First

Amended Complaint ("FAC") on November 1, 2013.  The FAC alleges SPX "is directly

infringing at least claim 22, among others, of the '782 Patent by making, using, selling, and/or

offering to sell at least the MH Fluid Cooler," s*ee* SPX Case, Dkt. No. 22, ¶ 13, and that SPX is

indirectly infringing the patent by inducing or contributing to the infringement of others,

including SPX's customers.  *See id.*, ¶¶ 14, 20-21.

On January 3, 2014, nearly six months after BAC filed the SPX Case, BAC filed a

lawsuit in Texas against two of SPX's customers, Sanderson Farms and Eagle Mountain Church.

In that Complaint, neither Sanderson Farms nor Eagle Mountain Church is accused of doing

anything other than ***using*** the accused Marley coolers.  *See* Customer Case, Complaint, Dkt. No.

1, ¶¶ 11, 13, 15, 16.  Sanderson is a chicken farm and processing company.  Eagle Mountain

Church is a church ministry.  Neither is in the business of making, selling or offering for sale the

accused products, or any other cooling devices.

Thus, BAC has made identical claims against an identical SPX product – just naming two

sets of defendants.  Plaintiff has conceded as much: "the same products and claims are at issue"

in both cases, and "the same facts will be used in both cases."  *See* Plaintiff's Motion to

Consolidate, Customer Case, Dkt. No. 32, at p. 5.  Notably, the only allegation of infringement

made against the Customer Defendants is their purported direct infringement by use of the

accused product, which is already at issue and subsumed within the SPX Case.

3

Thus, nearly every fact, document, witness, or expert witness to be proffered in support of or against the SPX MH Fluid Cooler infringement claims in the Customer Case will already have been offered in the SPX Case.  As mere end-user customers of the Marley MH Fluid Cooler, however, Sanderson Farms and Eagle Mountain Church will have no control over the documentation relating to the Marley MH Fluid Cooler or the witnesses who are knowledgeable about its design and operation.  Rather, the witnesses with knowledge of the product and the documentation concerning the design, features and operation of the accused device are under the control of SPX.   Accordingly, Defendants ask that the customer suit doctrine be applied in this case such that the Customer Case be stayed pending resolution of the threshold SPX Case.

## III.    ARGUMENT

### A.    Applicable Legal Standard on a Stay Motion

District courts have "inherent power to manage their dockets and stay proceedings." *In re Webvention LLC '294 Patent Litig*., 868 F. Supp. 2d 500, 504 (D. Md. 2012). Courts in this district consider three factors in determining whether a stay is appropriate in patent cases:  (1) the stage of the proceedings, (2) whether a stay would unduly prejudice the non-moving party; and (3) whether a stay would simplify issues and trial of the case.  *Id.*  Here, each of these factors weighs in favor of a stay as to the Customer Defendants, particularly since the claims alleged against the Customer Defendants stand solely on the basis of the their alleged use of SPX's off-the-shelf products – the very same products at issue in the underlying SPX Case.

### B.    The "Customer-Suit" Doctrine Favors a Stay of the Customer Case

Under the "customer suit" doctrine, district courts routinely stay patent infringement claims against a manufacturer's customers while the claims against the manufacturer proceed. "Underlying the customer suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant, the party that controls the product's design, rather

4

than suits involving secondary parties such as customers of the manufacturer." *In re Papst*

*Licensing GmbH & Co. KG Litig*., 767 F. Supp. 2d 1, 10 (D.D.C. 2011) (staying case against

camera manufacturer's customer while claims proceeded against the manufacturer); *accord*

*Corry v. CFM Majestic Inc.,* 16 F. Supp. 2d 660, 666 (E.D. Va. 1998) (severance and stay were

warranted because the "[customer-suit] claim is peripheral or secondary to plaintiff's claims

against the [manufacturer], and because [the customer-suit] claim is likely to be resolved by the

disposition of the claims against the [manufacturer].") The customer-suit doctrine is frequently

applied to "stay earlier-filed litigation against a customer while a later-filed case involving the

manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak*

*Co*., 657 F.3d 1349, 1357 (Fed. Cir. 2011). The Federal Circuit has long favored this approach.

*See, e.g., Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("[L]itigation against

… the manufacturer of infringing goods takes precedence over a suit by the patent owner against

customers of the manufacturer.").

　　　　More recently, however, the Federal Circuit clarified and expanded the scope of the

customer suit doctrine, stating that the principles behind the doctrine apply equally where

customer and manufacturer are named in the *same* suit, *regardless* of forum. *In re Nintendo*,

2014 WL 2889911, *2-3 (it was reversible error for the district court *not* to sever and stay the

action as against the named customers in such circumstances). In *Nintendo,* the Federal Circuit

held that in cases where the "[manufacturer's] liability is predicate to recovery from any of the

defendants, the case against [the manufacturer] ***must*** proceed first, in ***any*** forum." *Id.* at *3

(emphasis added). In doing so, the court reaffirmed the principles and purposes of the customer

suit doctrine, which it described as "facilitat[ing] [a] just, convenient, efficient, and less

expensive determination." *Id.* at *2. In particular, the Court noted that staying a customer suit

5

"avoid[s] imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.* (citations omitted).

As was compelled in *Nintendo,* the Court here should stay (or sever and stay) the SPX Customer action while the underlying action proceeds against SPX.  First, the Customer Defendants receive and use an off-the-shelf product.  They are not accused of modifying the accused device in any way.  *See* Customer Case, Dkt. No. 1.  The Customer Defendants are not involved in the design, development, or manufacture of the accused device.  Accordingly, these customers—a ministry and a poultry company—stand to offer little on the question of whether the accused device infringes.  They "are only peripherally involved," *Shifferaw v. Emson USA*, 2010 WL 1064380, *2 (E.D. Tex. Mar. 18, 2010), with their only relevant conduct being the question of whether they in fact used SPX's coolers.

### 1.    SPX's Denial of BAC's Allegations Related to Indirect Infringement Do Not Require that SPX's Customers Be Made Defendants

BAC claimed that it filed the Customer Suit because SPX had denied BAC's allegations of indirect infringement:

> . . . As a result of SPX's denials [of indirect infringement], BAC filed suit against SPX's customers in the Eastern District of Texas alleging only direct infringement (as the customers are the parties actually using the MH Coolers) to remove any issue relating to indirect infringement.  In other words, BAC's Texas case is a direct consequence of SPX denying that it had knowledge of the '782 patent and other requirements of indirect infringement not related to the issue of direct infringement. . . .

Ex. B, e-mail from J. McDole dated Feb. 5, 2014.  BAC even indicated it would consider agreeing to a stay if SPX agreed to stipulate to "all factors of indirect infringement besides direct infringement," s*ee* Ex. C, e-mail from J. McDole dated July 23, 2014.  As discussed below in more detail, BAC's demand for a stipulation admitting all facts related to direct infringement

except indirect infringement was unreasonable.  SPX's justified denial of Plaintiff's allegations of indirect infringement[1] does not require that the Customer Defendants be parties to the infringement suit between SPX and BAC.  One thing has nothing to do with the other.

First, BAC's claims as to the Customer Defendants will likely be fully resolved one way or the other by the SPX Case.  As noted above, the only infringement issue in the Customer Case, whether use of the accused Marley MH Cooler is an act of infringement, is also an issue in the SPX Case.  Plaintiff has accused SPX of indirect infringement (*see* FAC in SPX Case, ¶¶ 14, 20-21), which necessarily requires a finding that someone else (*e.g.*, the Customer Defendants) directly infringed.  Also, as noted above, SPX itself has been accused of direct infringement by use of the Marley MH Cooler, and Plaintiff has not alleged that SPX and its customers use the accused products differently.  Thus, the issue of whether SPX's customers directly infringe through use of the Marley MH Cooler will likely be decided in the SPX Case, regardless of whether the customers are parties.

If the Court determines that the accused devices, and their use, do not infringe the asserted patent, the Customer Case would be mooted entirely, because a finding that the SPX accused device infringes the asserted patent is predicate to BAC's recovery from any defendant.  Similarly, if SPX's manufacture or sale of the accused products is found to be an act of direct infringement, or if SPX is found to be indirectly infringing the patent by inducing or contributing to the infringement of its customers, the case against the customers would be moot as well, because BAC could not obtain recovery from them for the same acts. *See, e.g., Glenayre Elecs, Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect

---

[1] For example, as SPX discussed at length in its motion to dismiss Plaintiff's willfulness allegations, Plaintiff's theory that SPX knew of its alleged infringement prior to the filing of the lawsuit does not pass legal muster.  (*See* SPX Case, Dkt. No. 32, at pp. 6-12.)

damages for direct infringement by a buyer and a user of a product when actual damages covering that very use have already been collected from the maker and seller of that product."). Any recovery BAC can obtain from SPX will exhaust the claims as to SPX's downstream customers. *See Shifferaw,* 2010 WL 1064380, at *3 ("If [the manufacturer] is not found liable, then [Plaintiff] has no claims against the Retailer Defendants…. If [the manufacturer] is found liable and [plaintiff] collects damages from [the manufacturer], then the plaintiff cannot then in turn collect damages from the [downstream] Defendants, because [plaintiff] cannot receive a double recovery for the same sales").    Finally, BAC's delay of more than six years in filing the present lawsuit gives rise to a presumption of laches, *A. C. Aukerman Co. v. R. L. Chaides Const. Co.*, 960 F.2d 1020, 1034 (Fed. Cir. 1992) (*en banc*), and the SPX Case may therefore result in a finding that BAC is barred from even seeking damages from SPX or its customers prior to the filing of its Complaint against SPX.[2]

### 2.    Any Differences in the Customer Case Do Not Weight Against a Stay

BAC appears to be taking the position, however, that Customer Defendants need to be parties so that BAC can be made whole in the event that it cannot recover damages from SPX. This argument is without merit for several reasons.

First, while there is a potential scenario under which it is possible that the Customer Defendants would be liable for infringement but SPX would not be liable for the same infringement, this hypothetical situation is attenuated and would require that: (a) Defendants' use be found to be an act of infringement, but (b) that manufacture and sale of the same products by SPX (which are also accused acts of infringement —see FAC in SPX Case ¶13) would not be

---

[2] The Marley MH Cooler was on sale for more than six years before the filing of the lawsuit, and even before the issuance of the patent in September of 2006. *See* Ex. D and E, (featuring the Marley MH Fluid Cooler in newsletter articles to the Cooling Industry dated February 25, 2005, and April 28, 2005, respectively.)

acts of direct infringement, and (c) that SPX not be found liable for indirect infringement, and (d) that Plaintiff's claims are *not* barred by the doctrine of laches.

More importantly, it is well established that even if there are some minor differences between the claims against customer and manufacturer, that "argument is outweighed" by the efficiency that a severance and stay would afford the parties and the courts. *Id.* at *2. "Although there may be additional issues involving the defendants in [the customer] action, their prosecution will be advanced if [the plaintiff] is successful on the major premises being litigated in [the manufacturer litigation,] and may well be mooted if [the plaintiff] is unsuccessful." *Id.* at *2 (citations omitted).

Finally, it is difficult to understand how recovery from two customers would make BAC whole. The gross sales price of the products allegedly used by the two Customer Defendants was less $200,000 (collectively). Even if BAC prevails and obtains an exorbitant royalty rate, BAC's recovery from the Customer Defendants would be, at best, on the order of thousands of dollars.

### 3.     BAC Can Still Obtain Discovery from the Customer Defendants

It is also important to note that it is not necessary to have the customers be parties to the litigation for BAC to gather evidence related to its case. So long as discovery is available by which a plaintiff may "elicit information needed to prove direct infringement [by the customer] (if there be direct infringement)," the need to prove direct infringement is no bar to severing and staying the customer case. *Refac Int'l Ltd. v. IBM*, 798 F.2d 459, 460 (Fed. Cir. 1986) (rejecting arguments akin to BAC's). Such is the case here. On the issues for which the Customers *could* potentially have relevant information—their use of the accused device and any instructions provided to them by SPX for such use—SPX likely has the same information but, nonetheless,

SPX and the Customer Defendants agreed to provide discovery that would allow BAC to obtain

information directly pertinent to its accusations of indirect infringement by SPX and direct

infringement by the customers in exchange for a stay of the Customer Action.  *See* Ex. F (Aug. 1,

2014 e-mail from M. Anderson to M. Karson).

In short, there is no reason *not* to apply the customer suit doctrine to the facts of this case.

Applying that doctrine, the Court should sever and stay the Customer Case while the underlying

action proceeds against the "true defendant."  *In re Nintendo*, 2014 WL 2889911, at *2.

### C.      The Customer Case Is In Its Incipient Stages

In analyzing a stay motion, courts in this District "assess[] the stage of the proceedings,

…focus[ing] on whether a trial date has been set and the degree to which discovery has been

completed."  *In re Webvention*, 868 F. Supp. 2d at 504.  Here, a trial date has not been set, but in

any event, it will not occur before 2016.  Discovery only opened a few days ago, and the parties

have not yet exchanged contentions or even initial disclosures. *See* Customer Case, Dkt. No. 36.

The stage of the proceedings therefore weighs heavily in favor of a stay.

### D.      A Stay Would Not Unduly Prejudice BAC

The next factor analyzed in considering a stay motion is the likelihood that the non-

movant would be unduly prejudiced by a stay.  *Id.*  As explained above, SPX is the "true

defendant" in this action, since it is SPX that designed, manufactured, and sold the accused

Marley MH Fluid Coolers.  As such, it is SPX—not its Customers—that has virtually all of the

relevant information regarding the alleged infringement.  Moreover, Defendants volunteered to

provide discovery on the issues for which the Customers could potentially have relevant

information, *e.g.,* their use of the accused device.  Ex. F.  This will allow BAC to "elicit

information needed to prove direct infringement [by the customer] (if there be direct

infringement)," such that severing and staying the customer case is appropriate. *Refac Int'l*, 798

F.2d at 460.  Accordingly, a stay of the Customer Case will in no way hinder BAC's ability to

prosecute its infringement case.  Indeed, rather than prejudicing BAC, a stay of the Customer

Case will actually benefit BAC since the efficiencies of a stay will benefit all parties.

Accordingly, given the early stages of the Customer Case, Defendants' prompt filing of

this motion, and BAC's ability to take any necessary discovery through the SPX Case, BAC will

not be prejudiced by a stay.

>E.     **A Stay Will Simplify the Issues For Trial**

Courts recognize that staying a dueling claim against a manufacturer's customers is likely

to result in a more "just, convenient, efficient, and less expensive determination" on the merits.

*In re Nintendo*, 2014 WL 2889911, at *2.  First, staying the Customer Case will allow the Court

and the parties to focus on "the party that controls the product's design, rather than … secondary

parties such as customers."  *In re Papst Licensing*, 767 F. Supp. 2d at 10 (D.D.C. 2011).  Second,

it will avoid duplicative discovery,[3] and will avoid "imposing the burdens of trial" on the

Customer Defendants when it is the manufacturer, SPX, who is "the 'true defendant' in the

dispute."  *In re Nintendo*, at *2.  Third, a stay will minimize the need for the Court to resolve

unnecessary discovery disputes that may very well be mooted depending on the outcome of the

SPX Case.

In short, a stay will streamline the issues and minimize duplication and unnecessary

costs. There is simply no reason why BAC's duplicative claims against the Customer Defendants

should proceed, when the SPX Case will resolve any claim of liability.

## IV.     CONCLUSION

---

[3] Plaintiff has already conceded that "the same facts will be used in both cases and the same issues will be tried in both cases."  *See* Plaintiff's Motion to Consolidate, Customer Case, Dkt. No. 32, at p. 5.

For the foregoing reasons, the Customer Defendants respectfully request that the Court grant its motion and stay the Customer Case pending resolution of the SPX Case, *Baltimore Air Co., Inc. v. SPX Cooling Tech., Inc.*, Case No. 1:13-cv-02053-CCB.


Dated: August 14, 2014                                  Respectfully submitted,


                                                       By:/s/ *Elizabeth A. Scully*
                                                       Elizabeth A. Scully (Bar No. 27402)
                                                       Baker & Hostetler LLP
                                                       Washington Square, Suite 1100
                                                       1050 Connecticut Avenue, N.W.
                                                       Washington, D.C. 20036
                                                       Phone: (202) 861-1698
                                                       Fax: (202) 861-1783
                                                       escully@bakerlaw.com


                                                       Of Counsel:

                                                       Kenneth J. Sheehan (Bar No. 800798)
                                                       (*admitted pro hac vice*)
                                                       Michael E. Anderson (Bar No. 800996)
                                                       (*admitted pro hac vice*)
                                                       Baker & Hostetler LLP
                                                       Washington Square, Suite 1100
                                                       1050 Connecticut Avenue, N.W.
                                                       Washington, D.C. 20036
                                                       Phone: (202) 861-1500
                                                       Fax: (202) 861-1783
                                                       ksheehan@bakerlaw.com
                                                       meanderson@bakerlaw.com


                                                       *Attorneys for Defendants Eagle Mountain*
                                                       *International Church, Inc. and Sanderson*
                                                       *Farms, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2014, the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system, which will automatically send email notification of

such filing to all counsel of record:

Jeffrey A. Wolfson, Esq.
Jamie McDole, Esq.
Michael Karson, Esq.
Haynes and Boone, LLP
1615 L. Street, N.W., Suite 800
Washington, DC 20036
Phone: 202-654-4565
Fax: 202-654-4501
jeff.wolfson@haynesboone.com
jamie.mcdole@haynesboone.com
michael.karson@haynesboone.com


/s/ *Elizabeth A. Scully*
Elizabeth A. Scully